OSTERHAUS, J.,
concurring in part.
I concur with the decision to reverse and remand this matter to the School Board. But I would leave it to the School Board to decide whether to adopt the Administrative Law Judge’s recommended penalty, or to clarify the Final Order’s conflicting treatment of the ALJ’s findings.and conclusions.
The basic problem with the Final Order is that it both disputes the findings and conclusions of the ALJ and wholesale adopts them. Which is it? On the one hand, there is evidence supporting the School Board’s views on page 6 of the Final Order that the ALJ made an “unfounded determination that Respondent’s use of profanity and derogatory language was ‘understandable’ or ‘fairly innocuous and restrained.’ ” The ALJ’s order itself concluded that “there is never a valid reason to curse at students.” And the School Board makes the point that “rather than an isolated or occasional incidents, Respondent repeatedly used profanity and other inappropriate language toward and around different students on multiple occasions, even after she had been recently disciplined for it.”
By highlighting Ms. Quiller’s rhetorical and disciplinary history, the Final Order disputes the Recommended Order’s conclusion that “[tjhere is no proof that the behavior at issue constitutes ‘severe acts of misconduct.’ ” Though the definition of “more severe acts” in the collective bargaining agreement (CBA) was left undefined, the School Board’s human resource officer testified at the hearing that the School Board determines appropriate discipline based on how many times an incident has occurred, who the witnesses are, the severity of the incident, the amount of time that has occurred between incidents, and the employee’s willingness to modify his or her behavior. Her testimony con *747 tinued that some of the most severe conduct” includes instances when an employee has failed to modify his or her more serious behavior after having been warned. In turn, the School Board’s conclusion in this case was that Ms. Quiller’s repeated use of profanity and derogatory language, her discipline history, and her failure to modify her conduct warranted skipping step three of the progressive discipline policy. So there wasn’t “no proof’ that Ms. Quiller’s behavior constituted “more severe acts of misconduct” for purposes of the CBA, even if the AL J thought that her acts weren’t particularly severe.
Deference is due to the School Board’s decision with respect to its personnel decisions. Courts have little room to define what constitutes “more severe acts of misconduct” as against those responsible for running the county’s schools. See, e.g., Dep’t of Prof. Regulation v. Bernal, 531 So.2d 967, 968 (Fla.1988) (giving great discretion to boards to determine discipline). Courts will not substitute their judgment “if valid reasons for the board’s order exist in the record and reference is made thereto.” Id. at 968. To that end, the School Board’s identification of Ms. Quiller’s bad language, discipline, and failure to modify her behavior probably supports the departure it took from the ALJ’s recommended penalty.
But on the other hand, after disputing the ALJ’s findings and conclusions, the School Board’s Final Order proceeded to adopt them wholesale. If this is what the School Board intended — disregarding the particular problems it identified with the ALJ’s recommended order — then the majority is right that the recommended penalty should have been adopted.